UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOAO DIONISIO DE SOUSA,<br><br>      Plaintiff,<br><br>-against-<br><br>REPÚBLICA BOLIVARIANA DE VENEZUELA, a sovereign nation; FONDO DE PROTECCIÓN SOCIAL DE LOS DEPÓSITOS BANCARIOS f/k/a FONDO DE GARANTÍA DE DEPÓSITOS Y PROTECCIÓN BANCARIA, an agency or instrumentality of the Bolivarian Republic of Venezuela;<br><br>      Defendants,<br><br>$6,000,000 held in account numbers xxxxxxxxOOBO and xxxxxxxx9187 held at Morgan Stanley Smith Barney LLC,<br><br>      *In Rem* Defendants. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff, Joao Dionisio De Sousa ("Plaintiff"), by his undersigned attorneys, White and Williams LLP, as and for his Complaint against the *In Rem* Defendants $6,000,000 held in account numbers xxxxxxxxOOBO and xxxxxxxx9187 held at Morgan Stanley Smith Barney LLC ("Morgan Stanley") and Defendants, the República Bolivariana de Venezuela, a sovereign nation ("Venezuela"), Fondo de Protección Social de los Depósitos Bancarios, an agency or instrumentality of the Bolivarian Republic of Venezuela ("FOGADE" and, together with Venezuela, the "Sovereign Defendants") alleges as follows:

**INTRODUCTION**

1.  Plaintiff secured a loan from Banco Canarias de Venezuela, Banco Universal, C.A. ("Banco Canarias") and pledged U.S. Treasury Bills (the "Treasury Bills") as collateral with Banco

34913685v.3

Canarias (the "Collateral"). While the loan was still outstanding, Venezuela intervened and took control of Banco Canarias through FOGADE, ultimately ordering its liquidation.

2. In 2007, the Treasury Bills matured, and the associated USD funds were deposited into the Banco Canarias' accounts at Morgan Stanley and in escrow with Lehman Brothers Inc. ("Lehman") under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* (collectively the "Banks"). The Banks were sub-custodians of the Collateral. The total value of the Treasury Bills after maturity was $22,724,000. Plaintiff ultimately repaid the loan in full and satisfied all his obligations thereunder.

3. As such, Plaintiff, a Portuguese national, brings this action against the Defendants to recover his Collateral or alternatively to recover damages arising from the failure to return his Collateral, including but not limited to, the principal amount and any interest and to restore his rights in the Collateral taken in violation of international law.

## THE PARTIES

4. Plaintiff, Joao Dionisio De Sousa, is a Portuguese national over the age of 18 with dual Venezuelan and Portuguese citizenship. At all times material to allegations in this Complaint, Plaintiff has been a Portuguese national.

5. Defendant, Bolivarian Republic of Venezuela, is a "foreign state" within the meaning of 28 U.S.C. 1603(a).

6. Defendant, Fondo de Protección Social de los Depósitos Bancarios, formerly known as Fondo de Garantía de Depósitos y Protección Bancaria referred to herein as FOGADE, is a government agency of Venezuela and a foreign state as defined in 28 U.S.C. 1603(a), as well as an organ or instrumentality of Venezuela.

34913685v.3

7. Non-party Morgan Stanley is a Delaware limited liability company with its principal place of business in New York, New York and the sub-custodian for Banco Canarias' accounts numbers xxxxxxxxOOBO and xxxxxxxx9187.

8. Non-party sub-custodian bank, Lehman, was a Delaware corporation with its principal place of business located at 745 Seventh Avenue, New York, New York 10019, in the City, County and State of New York. On September 19, 2008, James W. Giddens was appointed as Trustee for the liquidation of the business of Lehman pursuant to 15 U.S.C. § 78eee(b)(3) of Securities Investor Protection Act. Lehman is the sub-custodian for Banco Canarias' account number xxxxxxxx 2540.

9. The Collateral totaling $6,000,000 held in account numbers xxxxxxxxOOBO and xxxxxxxx9187 held at Morgan Stanley is the *res* at issue in this action (collectively, the "Accounts"). The Accounts are located in this District in the custody of Morgan Stanley.

## JURISDICTION AND VENUE

10. This Court has *in rem* jurisdiction over the Collateral located in New York, *inter alia*, the Accounts held by Morgan Stanley as sub-custodian for Banco Canarias that contain $6,000,000 of Plaintiff's Collateral, which has been and upon information and belief, is presently located in, the Accounts held by Morgan Stanley in the Southern District of New York.

11. This Court's *in rem* jurisdiction is invoked with respect to this *res* (the Collateral), to give notice to all parties who claim an ownership or other interest in the Collateral that this Court is the forum in which all who make any claim to an ownership interest in the Collateral should bring his/her/its claim for presentation to the Court, in order for the Court to quiet title and to determine who is the lawful owner of the Collateral. If the Court determines the lawful owner to be a party other than Plaintiff, Plaintiff demands just compensation for the loss of the value of his Collateral.

12. This Court has subject matter jurisdiction over this action under the FSIA. Specifically, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original jurisdiction "of any nonjury civil action against a foreign state," as defined in 28 U.S.C. § 1603, unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement. Venezuela and FOGADE are not entitled to immunity pursuant to 28 U.S.C. §§ 1605(a)(2) and (a)(3), or under any applicable international agreement.

13. Venezuela is a "foreign state" within the meaning of 28 U.S.C. § 1603(a).

14. Under the "commercial activity" and expropriation exceptions to sovereign immunity, Venezuela and FOGADE are not immune from suit.

15. This Court has personal jurisdiction over Venezuela and FOGADE, pursuant to 28 U.S.C. § 1605(a)(3), because, in part, they exercise dominion or control over the subject matter of this action (the Collateral), in furtherance of an illicit expropriation that serves no public purpose, and that property is present in the United States.

16. This Court has personal jurisdiction over Venezuela and FOGADE pursuant to 28 U.S.C. § 1330(b), which provides that a United States District Court shall have personal jurisdiction over a foreign state that is not immune from suit, provided that service is affected in accordance with 28 U.S.C. § 1608.

17. Because Venezuela and FOGADE are a foreign state, they are not entitled to due process under the Fifth Amendment and therefore cannot assert a "minimum contacts" defense to jurisdiction.

18. Supplemental jurisdiction exists over the state law and common law causes of action pursuant to 28 U.S.C. § 1367.

19. This Court has jurisdiction to hear Plaintiff's action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3), and 28 U.S.C. § 1391(f)(1) and (f)(3).

## FACTUAL ALLEGATIONS

21. Non-party Superintendencia de las Instituciones de Sector Bancario ("SUDEBAN") is the regulatory authority in Venezuela responsible for supervising Venezuelan banks and other financial institutions. When a Venezuelan financial institution exhibits financial instability or insolvency, SUDEBAN may intervene with the goal of restoring the institution to solvency. Failing a return to solvency, SUDEBAN can order the liquidation of the institution, which is carried out by FOGADE.

22. FOGADE is akin to the U.S. Federal Deposit Insurance Corporation (FDIC). It is responsible for the liquidation of failed financial institutions (and their affiliated entities). In carrying out its duties as liquidator, FOGADE assumes administrative control over the failed institution or relevant legal entity, which remains the legal owner of its assets during the liquidation process.

23. On or about November 19, 2009, Venezuela "intervened" Banco Canarias and appointed interveners to control Banco Canarias. On or about November 27, 2009, Venezuela ordered the liquidation of Banco Canarias and, acting through SUDEBAN appointed FOGADE as the liquidator of Banco Canarias.

24. As liquidator of Banco Canarias, FOGADE acts as its administrator (including handling the payment of depositors and creditors). In this capacity, the Sovereign Defendants are the owners of Banco Canarias's assets, including the Collateral.

*<u>Plaintiff's U.S. Treasury Bills</u>*

25. Prior to the Sovereign Defendants' liquidation of Banco Canarias, Plaintiff solicited Banco Canarias for loans totaling 86 billion Venezuelan bolívars (the "Loans").

26. Plaintiff had pledged seven U.S. Treasury Bills in a principal amount totaling $22,724,000.00 as Collateral for the Loans.

27. Banco Canarias loaned Plaintiff nine billion Venezuelan bolívars. On October 31, 2006, Plaintiff pledged a U.S. Treasury Bill identified by the International Securities Identification Number ("ISIN") 912795YPOOBO and the Certificate of Custody and Administration Ticket No. 02639, held by sub-custodian Smith Barney CitiGroup in account number xxxxxxxxOOBO, and in the principal amount of $3,000,000.00 as Collateral for this loan. On January 25, 2007, this U.S. Treasury Bill matured.

28. Banco Canarias loaned Plaintiff nine billion Venezuelan bolívars. On November 23, 2006, Plaintiff pledged a U.S. Treasury Bill identified by ISIN 313588FR10B0 and the Certificate of Custody and Administration Ticket No. 02649, held by sub-custodian Smith Barney CitiGroup in account number xxxxxxxx9187, and in the principal amount of $3,000,000.00 as Collateral for this loan. On May 16, 2007, this U.S. Treasury Bill matured.

29. Banco Canarias loaned Plaintiff 18.1 billion Venezuelan bolívars. On May 3, 2007, Plaintiff pledged the U.S. Treasury Bill identified by ISIN US912795ZX23 and Certificate of Custody and Administration Ticket No. 30782, held by sub-custodian Lehman in account number xxxxxxxx2540, and in the principal amount of $5,079,000.00 as Collateral for this loan. On August 30, 2007, this U.S. Treasury Bill matured.

30. Banco Canarias loaned Plaintiff 20 billion Venezuelan bolívars. On May 18, 2007, Plaintiff pledged the U.S. Treasury Bill identified by ISIN US912975ZX23 and Certificate of

34913685v.3

Custody and Administration Under Warranty Ticket No. 31186, held by sub-custodian Lehman in account number xxxxxxxx2540, and in the principal amount of $5,064,000.00 as Collateral for this loan. On August 30, 2007, this U.S. Treasury Bill matured.

31.     Banco Canarias loaned Plaintiff 9.95 billion Venezuelan bolívars. On May 23, 2007, Plaintiff pledged the U.S. Treasury Bill identified by ISIN US912795ZX23 and Certificate of Custody and Administration Under Warranty Ticket No. 31177, held by sub-custodian Lehman in account number xxxxxxxx2540, and in the principal amount of $2,025,000.00 as Collateral for this loan. On August 30, 2007, this U.S. Treasury Bill matured.

32.     Banco Canarias loaned Plaintiff 9.95 billion Venezuelan bolívars. On May 23, 2007, Plaintiff pledged the U.S. Treasury Bill identified by ISIN US912795ZX23 and Certificate of Custody and Administration Under Warranty Ticket No. 31178, held by sub-custodian Lehman in account number xxxxxxxx2540, and in the principal amount of $2,025,000.00 as Collateral for this loan. On August 30, 2007, this U.S. Treasury Bill matured.

33.     Banco Canarias loaned Plaintiff 10 billion Venezuelan bolívars. On May 23, 2007, Plaintiff pledged the U.S. Treasury Bill identified by the ISIN US912795ZX23 and Certificate of Custody and Administration Under Warranty Ticket No. 31183, held by sub-custodian Lehman in account number xxxxxxxx2540, and in the principal amount of $2,531,000.00 as Collateral for this loan. On August 30, 2007, this U.S. Treasury Bill matured.

34. Plaintiff's Collateral is summarized in the table below:

|   | Date of Letter | ISIN | Ticket No. | Principal | Issue Date | Maturity Date | Sub-Custodian |
|---|---|---|---|---|---|---|---|
| 1. | 31-Oct-06 | 912795YPOOBO | 02639 | $ 3,000,000.00 |  | 25-Jan-07 | Morgan Stanley |
| 2. | 23-Nov-06 | 313588FR10B0 | 02649 | $ 3,000,000.00 | 16-May-07 | 30-Aug-07 | Morgan Stanley |
| 3. | 3-May-07 | US912795ZX23 | 30782 | $ 5,079,000.00 | 1-Mar-07 | 30-Aug-07 | Lehman |
| 4. | 18-May-07 | US912795ZX23 | 31886 | $ 5,064,000.00 | 1-Mar-07 | 30-Aug-07 | Lehman |
| 5. | 23-May-07 | US912795ZX23 | 31177 | $ 2,025,000.00 | 1-Mar-07 | 30-Aug-07 | Lehman |
| 6. | 23-May-07 | US912795ZX23 | 31178 | $ 2,025,000.00 | 1-Mar-07 | 30-Aug-07 | Lehman |
| 7. | 23-May-07 | US912795ZX23 | 31183 | $ 2,531,000.00 | 1-Mar-07 | 30-Aug-07 | Lehman |

35. In January of 2009, Citigroup and Morgan Stanley announced a joint venture to form Morgan Stanley Smith Barney, combining Morgan Stanley's Global Wealth Management Group with Citigroup's Smith Barney. In June 2013, Morgan Stanley acquired the remaining stake in Smith Barney from Citigroup, effectively taking full control of the business. Thus, the portion of Plaintiff's Collateral that was originally held by Smith Barney CitiGroup was now held by Morgan Stanley.

36. On September 15, 2008, Lehman filed for bankruptcy. *See In re Lehman Bros. Holdings, Inc.*, Case No. 08-13555 (SCC) (Bankr. S.D.N.Y.). Defendant James W. Giddens is the Trustee for the liquidation of Lehman and therefore has control and possession over the portion of Plaintiff's Collateral that was originally held by Lehman and ultimately became part of its bankruptcy estate and is being held in escrow.

*Plaintiff's Repayment of the Loans*

37. In or around 2013, Plaintiff was experiencing financial difficulties and believed that he would be unable to meet his obligations under the Loans.

38. On December 18, 2013, Plaintiff and FOGADE agreed to modify the terms of the loan whereby Plaintiff would mortgage three properties as additional collateral for the Loans (the "Mortgage Guaranty").

34913685v.3

39. On June 3, 2014, Plaintiff and FOGADE entered into the Mortgage Guaranty.

40. In 2016, Plaintiff paid off the Loans in their entirety.

41. The mortgages were not recorded by FOGADE before Plaintiff paid off the Loans.

42. In May of 2016, Plaintiff contacted FOGADE to address the release of the Mortgage Guaranty and the three properties that served as additional collateral.

43. On June 23, 2016, FOGADE sent a letter to Plaintiff and stated that the release of the Mortgage Guaranty was in process upon the verification that the last payment on the Loans was made. At the same time, FOGADE stated that release of the real estate collateral was under analysis by its legal department and once an opinion was obtained, he would receive a response to his inquiry regarding that collateral.

44. Thereafter, FOGADE released the Mortgage Guaranty.

45. Plaintiff subsequently met with FOGADE to discuss its release of the real estate mortgages. During this meeting with Plaintiff, FOGADE indicated that it had no documents relating to the original Collateral.

46. On April 4, 2024, Plaintiff contacted Morgan Stanley and demanded that it return Plaintiff's Collateral associated with his U.S. Treasury Bond ISIN: 912795YPOOBO held in account number xxxxxxxxOOBO.

47. On May 6, 2024, Plaintiff contacted Morgan Stanley requesting that it confirm the dollar amount in account number xxxxxxxx9187 (associated with U.S. Treasury Bond ISIN: 313588FR10B0), provide documentation associated with that account and inform him whether Morgan Stanley would be willing to stipulate to deposit the account's funds with the Court pending this litigation.

34913685v.3

48. To date, Morgan Stanley has not returned Plaintiff's Collateral or provided the requested information.

49. In or around March/April 2024, Plaintiff contacted Lehman to demand return of his Collateral. Lehman indicated that it had assigned all funds it was holding for distributions. Upon information and belief, Lehman may still be holding up to $4 million in escrow under FOGADE's name.

50. To date, FOGADE has not returned the Collateral to Plaintiff.

51. To date, Lehman has not returned Plaintiff's Collateral.

***The Sovereign Defendants Do Not Have Immunity***

52. The Sovereign Defendants have no sovereign immunity in this case by virtue of the commercial activity and expropriation exceptions of the FSIA, 28 U.S.C. §§ 1605(a)(2) and (a)(3).

53. This action is based upon commercial activity carried out in the United States by the Sovereign Defendants; specifically, their use of U.S.-based Banks to hold collateral in connection with the Loans and their continued control over the Collateral held by the Banks.

54. This action also is based upon an act performed in the United States in connection with the Sovereign Defendants' commercial activity elsewhere, such act performed in the United States being the Sovereign Defendants' maintenance of control of the Collateral pledged by Plaintiff to Banco Canarias held in the Banks, and such commercial activity elsewhere being FOGADE's control of Banco Canarias' ongoing business operations in Venezuela including in connection with providing the Loans and securing the Collateral.

55. This action is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act has caused a direct effect in the United States. The commercial activity of the Sovereign Defendants elsewhere

consists of their control of Banco Canarias' ongoing commercial operations in Venezuela, including in connection with the Loans. The direct effect in the United States consists of the continued control of the Collateral in the Banks and failure to return the Collateral to Plaintiff.

56. The Sovereign Defendants have taken steps in the United States to carry out the expropriation of the Collateral in this country, due, upon information and belief, to their failure to direct the Banks to distribute funds from the Collateral to Plaintiff. In this manner, the Sovereign Defendants stepped directly into the United States to take Plaintiff's Collateral without compensation.

57. The Sovereign Defendants' exercise of control of Banco Canarias' operations has had intentional and direct effects in the United States. Those effects include practically nullifying any steps by Plaintiff and his attorneys to obtain release of the Collateral to Plaintiff, and thus, are depriving him of any means to protect his beneficial ownership in the Collateral.

58. The expropriation exception to foreign sovereign immunity applies because in this case, rights in property taken in violation of international law are in issue, and that property is present in the United States in connection with a commercial activity carried out in the United States by the foreign state. Such rights in property include Plaintiff's rights in the Collateral and its associated interest, which is property present in the United States in connection with the Sovereign Defendants' commercial activities in the United States.

59. The Sovereign Defendants' expropriation of Plaintiff's Collateral without compensation does not implicate the application of the act of state doctrine. This action does not challenge any sovereign right of Venezuela to intervene Banco Canarias, but rather seeks compensation under United States, international and other law for an expropriation effectuated in the United States.

34913685v.3

60. The Sovereign Defendants are liable to Plaintiff in the same manner and to the same extent as a private individual under like circumstances in accordance with 28 U.S.C. § 1606.

## CLAIMS FOR RELIEF

### COUNT ONE
### (Declaratory Judgment)
### (Against Sovereign Defendants and *In Rem* Defendants)

61. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

62. Plaintiff pledged the Collateral to secure the Loans.

63. The Collateral was held by the Banks as sub-custodians to Banco Canarias as custodian and now that Banco Canarias is controlled by the Sovereign Defendants, they are the custodians.

64. Plaintiff fulfilled his obligation to Banco Canarias by paying off the Loan.

65. Despite Plaintiff's fulfillment of his obligations to Banco Canarias, the Sovereign Defendants have not released the Collateral to Plaintiff.

66. An actual case or controversy exists in that Plaintiff is entitled to the Collateral and the Sovereign Defendants have not returned the Collateral.

67. An inequitable and unjust result would follow if the Sovereign Defendants were allowed to continue to possess Plaintiff's Collateral; no adequate alternative remedy exists, and distribution of the Collateral to Plaintiff is necessary to resolve the dispute between Plaintiff and the Sovereign Defendants. Plaintiff seeks a declaration that he is the rightful owner of the Collateral and entitled to return of the Collateral that is currently held by the Banks as well as any distributions of the Collateral to the Sovereign Defendants.

68. Such a judicial declaration is necessary and appropriate at this time and under the circumstances and to resolve the dispute between Plaintiff and Defendants.

34913685v.3

69. Accordingly, Plaintiff seeks a declaratory judgment, pursuant to the Court's authority under 28 U.S.C. § 2201, which declares he is the rightful owner of the Collateral and entitled to its immediate return.

## COUNT TWO
## (Expropriation)
## (Against Sovereign Defendants)

70. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

71. Defendant Venezuela is a foreign sovereign, and a "foreign state" within the meaning of the FSIA.

72. Defendant FOGADE is an agency or instrumentality of Venezuela and is therefore a "foreign state" within the meaning of FSIA.

73. Defendant FOGADE has extensive commercial activities in the United States, including its direction of sub-custodians, the Banks, with respect to distributions and release of the Collateral.

74. Venezuela, directly and through FOGADE, has taken Plaintiff's Collateral, the principal deposited (and accompanying interest) as a result of the maturation of Plaintiff's U.S. Treasury Bills.

75. Venezuela acted without justification and authority in expropriating such assets without compensation.

76. Prior to the expropriation, Plaintiff had full ownership of the Collateral that was confiscated.

77. Today, pursuant to the official acts of Venezuela, FOGADE maintains control or took possession of the Collateral that was confiscated and expropriated.

34913685v.3

78. The Sovereign Defendants' expropriation of Plaintiff's Collateral is in violation of international law, which obliges the Sovereign Defendants to compensate Plaintiff for the taking of his Collateral.

79. The Sovereign Defendants have not paid or offered to pay compensation to Plaintiff for such taking.

80. The Sovereign Defendants' confiscation and expropriation of Plaintiff's Collateral was undertaken without prompt, adequate, and effective compensation.

81. The Sovereign Defendants are liable to pay Plaintiff an amount of money in United States dollars to be determined at trial but not less than $22,724,000.00, as well as interest and costs.

**COUNT THREE**
**(Unjust Enrichment)**
**(Against Sovereign Defendants)**

82. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

83. Plaintiff pledged the Collateral to Banco Canarias with the expectation that the principal and interest would be returned to him upon his repayment of the Loans.

84. Plaintiff repaid the Loans in full.

85. The Collateral belongs to Plaintiff.

86. Plaintiff has sought return of the Collateral.

87. The Sovereign Defendants have failed to return the Collateral and interest to Plaintiff.

88. The Sovereign Defendants' actions constitute a *de facto* forfeiture without due process or just compensation in violation of international law and United States law.

89. Equity, good conscience, and principles of United States and international law demand that the Sovereign Defendants return the Collateral plus interest to Plaintiff, and it is unjust to permit the Sovereign Defendants to retain the benefit of their actions without just compensation to the Plaintiff.

90. If the Sovereign Defendants are permitted to retain these funds, they will continue to be unjustly enriched as the direct and proximate result of their own wrongdoing.

91. By reason of the foregoing, Plaintiff has been damaged and demands judgment directing the return and release of the Collateral to Plaintiff in the amount of $22,724,000.00, as well as interest and costs.

## COUNT FOUR
### (Money Had and Received)
### (Against Sovereign Defendants)

92. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

93. The Sovereign Defendants received the $22,724,000 in Collateral in connection with the Loans issued to Plaintiff by Banco Canarias.

94. Plaintiff pledged the Collateral with the expectation that the Collateral would be returned upon repayment of the Loans.

95. Upon repayment of the Loans, the Sovereign Defendants have retained the entire amount of the Collateral and interest.

96. The Sovereign Defendants have benefitted from their receipt of the Collateral.

97. In equity and good conscience, the Sovereign Defendants should pay the total value of the Collateral plus interest to Plaintiff, the beneficial owner of the Collateral.

## CONCLUSION

WHEREFORE, Plaintiff Joao Dionisio de Sousa demands judgment:

34913685v.3

(i)  Declaring that the Plaintiff is the rightful owner of the Collateral and that the Collateral must be immediately returned to the Plaintiff;

(ii) Compelling the Sovereign Defendants to immediately release the Collateral to Plaintiff;

(iii) Awarding additional and/or consequential damages in an amount to be determined at trial that is no less than $22,724,000.00, along with prejudgment interest and costs;

(iv) Granting such other and further relief as may be just and proper.

April 22, 2025

By:    /s/ Thomas E. Butler
Thomas E. Butler
Nicole A. Sullivan
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, NY 10019
butlert@whiteandwilliams.com
sullivann@whiteandwilliams.com
212-714-3070

34913685v.3